1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SEAN MICHAEL PELTON,                    No.  2:21-CV-1968-TLN-DMC-P

12              Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   AMADOR COUNTY, CALIFORNIA,

15              Defendant.

16

17        Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42

18   U.S.C. § 1983.  Pending before the Court is Defendant's motion to dismiss.  See ECF No. 14.

19   Plaintiff has filed an opposition.  See ECF No. 15.  Defendant has filed a reply.  See ECF No. 16.

20        In considering a motion to dismiss, the Court must accept all allegations of

21   material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

22   Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

23   v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

24   738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

25   ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

26   395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

27   factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

28   In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

1 │ See Haines v. Kerner, 404 U.S. 519, 520 (1972).

2 │       Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
3 │ of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair
4 │ notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,
5 │ 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order
6 │ to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain
7 │ more than "a formulaic recitation of the elements of a cause of action;" it must contain factual
8 │ allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The
9 │ complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at
10 │ 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
11 │ court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
12 │ Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but
13 │ it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting
14 │ Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a
15 │ defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement
16 │ to relief." Id. (quoting Twombly, 550 U.S. at 557).

17 │       In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials
18 │ outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);
19 │ Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)
20 │ documents whose contents are alleged in or attached to the complaint and whose authenticity no
21 │ party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,
22 │ and upon which the complaint necessarily relies, but which are not attached to the complaint, see
23 │ Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials
24 │ of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.
25 │ 1994).

26 │       Finally, leave to amend must be granted "[u]nless it is absolutely clear that no
27 │ amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per
28 │ curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

2

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's original complaint. Plaintiff names Amador County as the only defendant.  Plaintiff is a 50-year-old pre-trial inmate housed in the Amador County Jail. See ECF No. 1. Since his incarceration, Plaintiff has been unable to exercise because the jail has not made any meaningful recreational space available. Id.  As a result of being unable to exercise, Plaintiff suffers from an increase in blood pressure, depression, loss of appetite, lethargy, anxiety, and stiffening of the legs and back. Id.  Plaintiff alleges the County of Amador and the Amador County Jail staff, through its Covid-19 polices, have shown deliberate indifference to his Eighth and Fourteenth amendment rights. Id. at 5.

At the time of his complaint, Plaintiff was 60 pounds overweight. Id. at 6. While incarcerated, Plaintiff lost 20 pounds due to loss of appetite. Id.  Additionally, Plaintiff has a previous shoulder injury and increasing stiffness in his back and legs, which prevents Plaintiff from performing strenuous exercises, such as pushups. Id.  Because of this, Plaintiff alleges he cannot exercise in his cell. Id.

According to Plaintiff, the Amador County Jail is a small facility with only a single outdoor exercise yard. Id. at 3.  For approximately 18 months, the outdoor exercise yard has been closed to all inmates because jail staff placed a Covid-19 tent in the yard. Id.  The Covid-19 tent on the outdoor exercise yard is relatively small. Id. at 5.  The tent can hold approximately six people and could be set up in a matter of hours. Id.  Since the tent was put up, no inmate has been housed or quarantined in it, even after two Covid-19 outbreaks occurred at the Amador County Jail. Id. at 3.

One of the outbreaks occurred on September 23, 2021, when five inmates tested positive for Covid-19. Id. at 3.  Instead of housing the infected inmates in the Covid-19 tent, jail staff placed all inmates who were housed in cells in the pod. Id.  Three inmates who had cellmates that tested positive for Covid-19 were not quarantined but instead left in their cells. Id.

/ / /

/ / /

/ / /

3

1      The jail offers 5.5 hours of dayroom each day. Id. at 4.  The dayroom is

2    rectangular in shape and is approximately 16 feet by 20 feet large. Id.  Within the dayroom there

3    are 4 tables, two three-tiered bunk beds, two single person shower stalls, and a stairway which

4    occupies one wall. Id.  The day room houses seven inmates. Id. at 3.  Generally, there are 12 to 20

5    inmates in the dayroom at any time leaving no room to exercise. Id. at 5.  Additionally, there is no

6    clear path along the dayroom's perimeter that would allow inmates to walk laps around the room.

7    Id.

8      Plaintiff alleges there is no internal option to address his exercise issue within the

9    jail. Id. at 4-5.  Plaintiff alleges jail staff will not provide administrative remedies for Covid-19

10    related issues, including his exercise claim. Id.  Plaintiff alleges it is not jail policy to accept

11    grievances regarding anything which has to do with Covid-19 issues. Plaintiff alleges the exercise

12    yard falls in this category due to the Covid-19 tent. Id.

13      Based on these allegations, Plaintiff contends that jail staff violated his Eighth

14    and Fourteenth Amendment rights by denying him access to exercise. Id. 5.  Further, Plaintiff

15    contends Amador County is liable for the violation of his rights by jail staff. Id.  Plaintiff seeks

16    injunctive relief from the court ordering Amador County to remove the Covid-19 tent, $1,000,000

17    in actual damages, and $10,000,000 in punitive damages. Id. at 6.

18

19                  **II. DISCUSSION**

20      In its motion to dismiss, Defendant argues the action should be dismissed because:

21    (1) Plaintiff has failed to exhaust administrative remedies prior to filing suit; (2) Plaintiff's claim

22    fails because he has not alleged a physical injury; (3) Plaintiff cannot sustain a claim against

23    Amador County because he does not allege facts to show an underlying violation of his rights;

24    and (4) Plaintiff fails to allege facts showing jail staff acted pursuant to a policy or custom of the

25    county.

26    / / /

27    / / /

28    / / /

1   **A.**   <u>**Exhaustion**</u>

2   Defendant argues the Court should grant its motion to dismiss because the Prison

3   Litigation Reform Act ("PLRA") requires inmates, including pretrial detainees, to exhaust

4   available administrative remedies before filing civil actions in federal court and Plaintiff failed to

5   do so in this case.

6   Prisoners seeking relief under § 1983 must exhaust all available administrative

7   remedies prior to bringing suit.  <u>See</u> 42 U.S.C. § 1997e(a).  This requirement is mandatory

8   regardless of the relief sought.  <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001) (overruling

9   <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

10   the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

11   while the lawsuit is pending.  <u>See</u> <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

12   Supreme Court addressed the exhaustion requirement in <u>Jones v. Bock</u>, 549 U.S. 199 (2007), and

13   held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

14   because lack of exhaustion is an affirmative defense which must be pleaded and proved by the

15   defendants; (2) an individual named as a defendant does not necessarily need to be named in the

16   grievance process for exhaustion to be considered adequate because the applicable procedural

17   rules that a prisoner must follow are defined by the particular grievance process, not by the

18   PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not

19   all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first

20   instance.  <u>See</u> <u>Albino v. Baca</u>, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the

21   burden of showing that the grievance process was not available, for example because it was

22   thwarted, prolonged, or inadequate.  <u>See</u> <u>id.</u>

23   The Supreme Court held in <u>Woodford v. Ngo</u> that, in order to exhaust

24   administrative remedies, the prisoner must comply with all of the prison system's procedural

25   rules so that the agency addresses the issues on the merits.  <u>See</u> 548 U.S. 81, 89-96 (2006).  Thus,

26   exhaustion requires compliance with "deadlines and other critical procedural rules."  <u>Id.</u> at 90.

27   Partial compliance is not enough.  <u>See</u> <u>id.</u>  Substantively, the prisoner must submit a grievance

28   which affords prison officials a full and fair opportunity to address the prisoner's claims.  <u>See</u> <u>id.</u>

at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

quantity of prisoner suits "because some prisoners are successful in the administrative process,

and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

When reviewing exhaustion under California prison regulations which have since been amended,

the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on

adequate notice of the problem for which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557

F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)

(reviewing exhaustion under prior California regulations).

In Ross v. Blake, 578 U.S. 632 (2016), the Supreme Court [held] that § 1997e(a)

requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain

some relief for the action complained of."  By way of a non-exhaustive list, the Court recognized

three circumstances in which an administrative remedy was not capable of use to obtain relief

despite being officially available to the inmate: (1) when the administrative procedure "operates

as a simple dead end" because officers are "unable or consistently unwilling to provide any relief

to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes,

practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it";

and (3) when prison administrators "thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." Id. at 1859–60.

Defendant argues the Court should grant its motion to dismiss because the facts

alleged in the complaint make clear that Plaintiff failed to exhaust his administrative remedies

prior to filing suit.  Defendant argues that, within his Complaint, Plaintiff affirmatively states that

he did not submit a request for administrative relief.  Defendant also asserts that, even if jail staff

did not accept Defendant's grievance because the jail did not accept Covid-19 related grievances,

Plaintiff could have filed a grievance violation for his right to exercise.  According to Defendant:

> Here, on the face of the Complaint it is evident that Plaintiff has
> not exhausted his administrative remedies. Plaintiff alleges he did not
> submit a request for administrative relief on his claim. Complaint at p. 3.
> He may argue that grievances procedures are not *available* because the jail
> is not accepting Covid-19 related grievances. However, Plaintiff's claim is
> for violation of his right to exercise, which is much broader than his
> specific issue with the placement of the Covid-19 tent on the yard.

6

Plaintiff's right to have access to exercise may be fulfilled outdoors or indoors. Even if the jail will not allow him to file a grievance on the narrow issue of the placement of the Covid-19 tent on the yard, as alleged, he can still file a grievance regarding his right to exercise. In other words, he has plead no facts to establish that he cannot file a grievance requesting access to meaningful exercise in general, and thus this claim should be dismissed for failure to exhaust administrative remedies.

ECF No. 14, pg. 5

Defendant's argument is not persuasive.  At this stage of the proceedings, the Court must accept all of the allegations in the complaint as true.  Here, Plaintiff states in his complaint that "[a]dministrative remedies are not accepted for Covid-19 related issues, including the yard." ECF No. 1, pg. 3.  Construed in Plaintiff's favor, the Court finds this allegation broad enough to encompass a grievance relating to the exercise yard.  Thus, on the face of the complaint, Plaintiff has alleged that there is no available grievance process concerning the issue raised in the complaint – availability of an exercise yard.  This interpretation is confirmed by Plaintiff's opposition to Defendant's motion in which he more clearly states that the jail does not provide any sort of grievance process whatsoever.  See ECF No. 15.

As the Ninth Circuit has observed, exhaustion is best considered in the context of a motion for summary judgment unless the failure to exhaust is clear on the face of the complaint. See Albino v. Baca 747 F.3d 1162 (9th Cir. 2014).  In this case, the face of the complaint does not make clear a failure to exhaust.  Instead, Plaintiff alleges, albeit not as clearly as might be preferred, that there is no available grievance process.  The Court will recommend denial of Defendant's motion to dismiss on the issue of exhaustion, without prejudice to renewal on summary judgment.

**B.    Failure to Allege Physical Injury**

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); see also 28 U.S.C. § 1346(b)(2) (similar provision added to the Federal Tort Claims Act).  This provision "requires a prior showing of physical injury that need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002); see also Grenning v. Miller-Stout,

7

739 F.3d 1235, 1238 (9th Cir. 2014); Pierce v. Cnty. of Orange, 526 F.3d 1190, 1223–24 (9th Cir. 2008); Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003).  The provision does not apply to allegations of constitutional violations not premised on mental or emotional injury. See Oliver, 289 F.3d at 630 (Fourteenth Amendment claims); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (First Amendment claims).

According to Defendant:

> Here, Plaintiff's injuries are purely mental or emotional. Plaintiff alleges that he has suffered from stiffness in his back and legs, rising blood pressure, depression, loss of appetite, lethargy, and anxiety. Complaint at p. 3. Accepting these allegations as true, all of these injuries are physical manifestations of the mental or emotional anxiety, and are exactly the kinds of de minimis mental or emotional injuries that the PLRA is designed to protect against. As such, this action should be dismissed.

ECF No. 14, pgs. 5-6.

Defendant's argument is not persuasive.  In the complaint, Plaintiff alleges a violation of his constitutional right to access to exercise while in jail.  For damages resulting from this violation, Plaintiff alleges: "My back and legs are becoming stiff, my blood pressure has risen by more than 20 points, depression, loss of appetite, I'm becoming lethargic and anxiety that I will be held in these conditions for a full county jail prison term."  ECF No. 1, pg. 3.  While Plaintiff has alleged some type of mental or emotional damage, Plaintiff's claim is not premised on a mental or emotional injury.  Instead, the claim is premised on the alleged denial of exercise opportunities.  The Court simply does not agree with Defendant that "all of" the damages listed are "physical manifestations of" mental or emotional injury.  To the contrary, Plaintiff very clearly alleges non-emotional damages, such as increased blood pressure as well as back and leg stiffness.

### C.   Liability of Amador County

Defendant argues Plaintiff cannot sustain a claim against Amador County because Plaintiff does not allege facts to show an underlying violation of his constitutional rights. Defendant also argues that the complaint is insufficient to establish municipal liability because Plaintiff has not alleged that jail staff acted pursuant to an official custom or policy of Amador

8

1    County.

2                    1.      <u>Underlying Constitutional Violation</u>

3              Exercise has been recognized as "one of the basic human necessities protected by

4    the Eighth Amendment" and the same is true under the Fourteenth Amendment. <u>Norbert v. City</u>

5    <u>and County of San Francisco</u>, 10 F.4th 918, 928 (citing <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th

6    Cir. 1997). "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates

7    confined to continuous and long-term segregation." <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir.

8    1996) (citing <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318

9    (9th Cir. 1998); see also <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151-52 (9th Cir. 2010); <u>Richardson</u>

10   <u>v. Runnels</u>, 594 F.3d 666, 672 (9th Cir. 2010); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1042 (9th Cir.

11   2005); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1133 (9th Cir. 2000) (en banc); <u>Allen v. Sakai</u>, 48 F.3d

12   1082, 1087 (9th Cir. 1995); <u>Allen v. City of Honolulu</u>, 39 F.3d 936, 938-39 (9th Cir. 1994);

13   <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457-58 (9th Cir. 1993); <u>Toussaint v. Yockey</u>, 722 F.2d 1490,

14   1492-93 (9th Cir. 1984). "[A] temporary denial of outdoor exercise with no medical effects is not

15   a substantial deprivation." <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997); see also <u>Noble v.</u>

16   <u>Adams</u>, 636 F.3d 525, 531 (9th Cir. 2011) (concluding prison officials were entitled to qualified

17   immunity from § 1983 claim that post-riot lockdown of prison resulted in denial of Eighth

18   Amendment right to exercise); <u>Norwood v. Vance</u>, 591 F.3d 1062, 1070 (9th Cir. 2010)

19   (recognizing that temporary denial of outdoor exercise with no medical effects is not a substantial

20   deprivation); <u>Frost v. Agnos</u>, 152 F.3d 1124, 1130 (9th Cir. 1998).

21             Relying on <u>Norbert</u>, Defendant argues: (1) Plaintiff does not plead facts to

22   establish deprivation of meaningful exercise opportunities; and (2) Plaintiff fails to allege he

23   suffered injury beyond the inherent discomforts of confinement.  Defendant also argues that, even

24   if Plaintiff has alleged sufficient facts to show a denial of meaningful exercise opportunities, the

25   tent placement served a legitimate penological purpose and was not punishment.  For the reasons

26   discussed below, these arguments are not persuasive.

27   / / /

28   / / /

                                                9

1

i.     Meaningful Exercise Opportunities

2

    Defendant argues Plaintiff's allegation that he has "been given no opportunity for

3

exercise" is conclusory and fails to show an underlying rights violation.  According to Defendant:

4

> . . . Even if the outdoor exercise yard has been closed due to the
> placement of a Covid-19 tent, as he alleges, he has not demonstrated that

5

> he is without other opportunities for meaningful recreation. He claims that
> he cannot exercise in his cell because he is unable to do pushups.

6

> However, he has not provided any other details regarding the size of his
> cell, and has provided no facts to show that he cannot perform other means

7

> of exercise besides pushups in his cell. Additionally, the pleadings
> concede that he has 5.5 hours per day in a day room, which is similar to

8

> the constitutional exercise opportunities in *Norbert*. While Plaintiff makes
> a conclusory allegation that there is no room to perform exercise in the

9

> day room, he provides no reason he cannot perform some sort of exercise.
> He merely states that it is crowded due to people, tables, and bunk beds.

10

> However, just because there is no clear path around the perimeter does not
> mean he cannot walk around in another path or do other light exercise.

11

> Here, Plaintiff has access to a day room 5.5 hours a day and thus is not
> unconstitutionally restrained.

12

> ECF No. 14, pg. 7.

13

14

    The Court is unpersuaded by this argument.  Plaintiff has sufficiently alleged in his

15

complaint that he is unable to exercise in his cell and is unable to exercise in the dayroom due to

16

overcrowding.  Additionally, unlike <u>Norbert</u> where the dayroom was large enough to allow for

17

some space for limited exercise and there was access to an exercise yard, the dayroom at the

18

Amador County Jail is alleged to be so overcrowded with persons and objects that there is no

19

space available for limited exercises such as walking the perimeter of the room.  The Court must

20

assume the allegations in the complaint are true.  Doing so, the Court finds that the current

21

allegations are sufficient to establish a prima facie case of denial of access to meaningful exercise

22

opportunities at the Amador County Jail.

23

ii.    Injury Beyond Inherent Discomforts of Confinement

24

    Defendant also argues Plaintiff fails to allege an injury beyond the inherent

25

discomforts of confinement. Without citation to any authority, Defendant asks the Court to find

26

that the injuries and damages alleged by Plaintiff as a result of lack of exercise do not

27

significantly exceed the ordinary discomforts of incarceration.  <u>See</u> ECF No. 14, pg. 8.  The Court

28

cannot do so.  Indeed, Plaintiff's allegations of increased blood pressure, back and leg problems,

depression, and anxiety all stem from the alleged lack of exercise, which itself is not a permitted discomfort of confinement.  This is not, as Defendant argues, akin to finding that incarceration itself is unconstitutional.  Rather, the Court finds that Plaintiff's allegations, which are accepted as true, show injury beyond the ordinary discomforts of Plaintiff's confinement.  To this point, the complaint indicates that the alleged damages and injuries would not be present but for the lack of exercise and, thus, are not merely the ordinary discomforts of confinement.

### iii.    Penological Interest in Placement of Covid-19 Tent

Defendant argues even if Plaintiff's ability to exercise was affected, the placement of the Covid-19 tent was part of a legitimate penological purpose to protect inmate health.  This argument would be persuasive if the placement of the Covid-19 tent in the exercise yard was the only concern.  In his complaint, however, Plaintiff alleges denial of exercise opportunities stemming from lack of adequate indoor space as well as placement of the Covid-19 tent in the available outdoor yard.  In essence, the reasons for placement of the Covid-19 tent are immaterial.

### 2.    Municipal Policy or Custom

A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability.  See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992); City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008); Webb v. Sloan, 330 F.3d 1158, 1163-64 (9th Cir. 2003); Gibson v. Cty. of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002); Hopper v. City of Pasco, 241 F.3d 1067, 1082 (9th Cir. 2001). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (discussing Iqbal and explaining that "when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates.").

/ / /

Therefore, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality. See Brown, 520 U.S. at 403; City of Canton, 489 U.S. at 385; Monell, 436 U.S. at 690-91; Fogel, 531 F.3d at 834; Webb, 330 F.3d at 1164; Gibson, 290 F.3d at 1187; Hopper, 241 F.3d at 1082; Blair v. City of Pomona, 223 F.3d 1074, 1079 (9th Cir. 2000); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992). See also Connick v. Thompson, 563 U.S. 51, 60 (2011) (explaining that to impose liability on a local government under § 1983 the plaintiffs must prove that an "action pursuant to official municipal policy" caused their injury); Sandoval v. Las Vegas Metro. Police Dep't, 756 F.3d 1154, 1167-68 (9th Cir. 2014) (same). The Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality . . . has caused an employee to [violate plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Brown, 520 U.S. at 405. The "policy or custom" requirement applies irrespective of whether the remedy sought is money damages or prospective relief. Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 34 (2010).

Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Navarro v. Block, 72 F.3d 712, 714-15 (9th Cir. 1996); Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989), overruled on other grounds by Bull v. City & Cty. of San Francisco, 595 F.3d 964 (9th Cir. 2010). Allegations of random acts, or single instances of misconduct, however, are insufficient to establish a municipal custom. See Navarro, 72 F.3d at 714; Thompson, 885 F.2d at 1444. Once the plaintiff has demonstrated that a custom existed, the plaintiff need not also demonstrate that "official policy-makers had actual knowledge of the practice at issue." Navarro, 72 F.3d at 714-15; Thompson, 885 F.2d at 1444. But see Blair v. City of Pomona, 223 F.3d 1074, 1080 (9th Cir. 2000) ("open to the [municipality] to show that the

12

1  custom was not known to the policy-makers").

2          A plaintiff may establish municipal liability by pleading facts showing conduct

3  consistent with a formal government policy or longstanding practice or custom; conduct by an

4  official with final policy-making authority; or ratification of another official's conduct by

5  someone with final policy-making authority.  See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.

6  1996).  In addition, the plaintiff must show that the policy or custom was implemented or ratified

7  with deliberate indifference to the likelihood that it would violate constitutional rights.  See Oviatt

8  By and Through Waugh v. Pearce, 954 F.2d 1470 (9th Cir. 1992).

9          Defendant argues that Plaintiff fails to sufficiently allege facts to implicate

10  Amador County.  Defendant asserts Plaintiff fails to show: (1) Jail staff acted pursuant to a county

11  policy or custom; (2) an unconstitutional act by a policy-making official; (3) ratification of a

12  constitutional violation by policy makers; or (4) Plaintiff fails to show deliberate indifference by

13  Amador County.  These arguments are well-taken and the Court agrees that Plaintiff's complaint

14  does not contain sufficient allegations regarding an official policy or custom to establish the

15  liability of Amador County.  Defendant's motion to dismiss should be granted on the basis of

16  failure to allege sufficient facts to establish municipal liability.  Plaintiff should be provided leave

17  to amend.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

13

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motion to dismiss, ECF No. 14, be granted and that Plaintiff be provided leave to file a second amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  February 8, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14