IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MICHAEL PELTON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AMADOR COUNTY, CALIFORNIA,<br><br>　　　　　　Defendant. | No. 2:21-CV-1968-TLN-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　　Plaintiff, who is proceeding pro se, brings this civil rights action against Defendant Amador County pursuant to 42 U.S.C. § 1983 and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Pending before the Court is Defendant's motion for summary judgment. See ECF No. 31. Plaintiff has filed an opposition. See ECF No. 38. Defendant has filed a reply. See ECF No. 41.

　　　　　The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See

1

1  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the
2  moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

2

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A. Procedural History

In determining that Plaintiff's original complaint stated a potentially viable claim for relief and ordering service, the Court stated as follows:

> Plaintiff names the County of Amador as the only defendant. See ECF No. 1, pgs. 1, 2. Plaintiff complains of constitutional violations stemming from a municipal policy. According to Plaintiff: "jail policy is not to accept grievances regarding anything which has to do with Covid-19 related issues." Id. at 4-5. . . .

ECF No. 9, pg. 1.

Defendant waived service and responded to the complaint by way of a motion to dismiss. See ECF No. 14. On February 8, 2023, the undersigned issued findings and recommendations addressing Defendant's motion. See ECF No. 21. The Court agreed with Defendant that Plaintiff's complaint failed to plead sufficient facts to establish a Monell claim against the county, but recommended granting Plaintiff leave to amend. See id. The February 8, 2023, findings and recommendations were adopted in full by the District Judge on March 8, 2023. See ECF No. 25.

Plaintiff filed his first amended complaint on April 6, 2023. See ECF No. 26. Defendant filed an answer on April 21, 2023. See ECF No. 27. On April 26, 2023, the Court issued a scheduling order, setting deadlines for completion of discovery and filing of dispositive motions. See ECF No. 28. Pursuant to that order, discovery closed on January 8, 2024. See id.

B.     **Plaintiff's Allegations**

This action currently proceeds on Plaintiff's verified first amended complaint. See ECF No. 26. In addition to Amador County, Plaintiff newly names as a defendant Gary Redman, the Amador County Sheriff.[1]  See id. at 1, 2.

Plaintiff states that he was booked into the Amador County Jail on July 27, 2021, as a pre-trial detainee. See id. at 4. Plaintiff alleges that, from the date through March 1, 2022, he had no opportunity to exercise because the jail's single exercise yard had been closed. See id. According to Plaintiff, the exercise yard was closed to allow for a "Covid-19 tent." Id. Plaintiff states that, when he filed this action, he initially sought injunctive relief to have the tent removed, but "that issue was resolved approximately five months after filing." Id.

Plaintiff next states that the Amador County Jail is a very small facility constructed in 1984 and designed to house 76 inmates. See id. Plaintiff alleges that there is no room to perform "meaningful exercise" in the cells or dayroom. Id. at 4-5. Plaintiff next describes the conditions in the jail's dayroom, specifically details of overcrowding. See id. at 5. Plaintiff states: "At this point there is literally no space to put another mattress on the floor [of the dayroom]." Id. Plaintiff claims the only space allowing for "meaningful exercise" was the exercise yard, which had been closed. Id. According to Plaintiff, despite the exercise yard being closed for the "Covid-19 tent," the tent was never used for its intended purpose. See id. Plaintiff alleges that no inmates were ever quarantined in the tent and an outbreak occurred within the jail

---

[1]     Plaintiff's addition of a new defendant is procedurally inappropriate as an amendment filed absent stipulation or leave of court.
The Federal Rules of Civil Procedure provide that a party may amend his or her pleading once as a matter of course within 21 days of serving the pleading or, if the pleading is one to which a responsive pleading is required, within 21 days after service of the responsive pleading, see Fed. R. Civ. P. 15(a)(1)(A), or within 21 days after service of a motion under Rule 12(b), (e), or (f) of the rules, whichever time is earlier, see Fed. R. Civ. P. 15(a)(1)(B). In all other situations, a party's pleadings may only be amended upon leave of court or stipulation of all the parties. See Fed. R. Civ. P. 15(a)(2).
Plaintiff's first amended complaint was filed almost one year after Defendant initially responded in this action by way of a motion to dismiss. See ECF Nos. 14 (motion to dismiss filed in April 2022) and 26 (first amended complaint filed in April 2023). While the Court permitted leave to amend as to Plaintiff's allegations of municipal policy against Defendant Amador County, the Court did not grant leave to amend to add a new defendant. Nor does the record reflect that Plaintiff obtained a stipulation from Defendant to add Gary Redman as a defendant. For these reasons, and consistent with Rule 15, the Court finds that Gary Redman has been improperly named and is not a party to this action.

despite the tent. See id. Plaintiff asserts that, after complaints from inmates' families about the lack of access to the exercise yard, the Amador County Sheriff ordered removal of the tent. See id. at 6.

Plaintiff states that, during the time the tent was in place, he and other inmates submitted complaints every day, up to 220 times, about the lack of access to the exercise yard. See id. According to Plaintiff, at the start of the Covid-19 pandemic, the "Amador County Board of State and Community Corrections" implemented an official policy, which the Amador County Sheriff promulgated at the Amador County Jail, to "suspend exercise needs." Id. at 7.

Plaintiff alleges violation of his Fourteenth Amendment right to exercise as a pre-trial detainee. See id. at 4. Plaintiff seeks $1,000,000.00 in monetary damages. See id. at 11.

## II. THE PARTIES' EVIDENCE

### A. **Defendant's Evidence**

Defendant's motion for summary judgment is supported by a separate statement of undisputed facts, see ECF No. 31-1, the declaration of defense counsel William Bittner, Esq., and attached exhibits, see ECF No. 31-2, the declaration of Amador County Sheriff's Office Captain Adam Stone and attached exhibits, see ECF No. 31-3, and the transcript of Plaintiff's deposition, see ECF No. 31-4.

According to Defendant, the following facts are undisputed:

   1.   The Amador County Jail (the Jail) is a rural detention facility that houses sentenced and un-sentenced inmates, is state rated for 76 inmates, and received approximately eighteen new inmates per week throughout the incident. See Stone Decl. at ¶ 3.

   2.   At the Jail, inmates are housed in multiple "pods," which are made up of multiple cells connected to a central "day room," and recreation space is provided through access to the day rooms, a single library, and a single concrete outdoor yard measuring approximately 40 feet by 50 feet. See Exhibit A to Stone Decl., page 2.

   3.   On March 4, 2020, Governor Gavin Newsom proclaimed a state of emergency existed in California as a result of Covid-19. See Exhibits B and M to Stone Decl.

///

|   |   |
|---|---|
| 1 | 4.     On March 12, 2020, Amador County's Public Health Officer issued a Declaration of Local Health Emergency Regarding Novel Coronavirus Disease (Covid-19), which found that: (1) the virus is a serious public threat because much is unknown regarding the exact modes of transmission and case fatality rate, (2) the reported cases of COVID-19 escalated dramatically over a short period of time, and (3) the World Health Organization has declared the outbreak to be a pandemic as of March 11, 2020. See Exhibit C to Stone Decl. |

       4.      On March 12, 2020, Amador County's Public Health Officer issued a Declaration of Local Health Emergency Regarding Novel Coronavirus Disease (Covid-19), which found that: (1) the virus is a serious public threat because much is unknown regarding the exact modes of transmission and case fatality rate, (2) the reported cases of COVID-19 escalated dramatically over a short period of time, and (3) the World Health Organization has declared the outbreak to be a pandemic as of March 11, 2020. See Exhibit C to Stone Decl.

       5.      On March 17, 2020, the Director of Emergency Services for Amador County proclaimed a local emergency in Amador County due to "conditions of extreme peril" presented by the novel coronavirus. See Exhibit D to Stone Decl.

       6.      After consulting with the Amador County Public Health Officer and considering federal, state, and local guidance regarding Covid-19, on or about March 18, 2020, the Jail decided to suspend access to the library and outdoor yard until the state of emergency was lifted, in order to limit the spread of Covid-19 between pods and mitigated the impacts through access to the day room. See Stone Decl. at ¶ 9.

       7.      The Jail notified the California Board of State and Community Corrections (BSC") and requested emergency suspension of the Title 15 standards because it intended to suspend outdoor exercise starting on March 18, 2020, until the state of emergency was lifted, and the BSCC granted each request for the duration of the incident. See Stone Decl. at ¶ 10; see also Exhibits E and F to Stone Decl.

       8.      While the outdoor exercise yard was closed, inmates performed large muscle exercises in their cells and in their day rooms, walked up and down the stairs and around the ground floor in their day rooms, took showers, and freely took part in other recreation such as making phone calls, watching TV, and playing games. As part of the jail's mitigation measures, they were provided two extra free phone calls per week. See Stone Decl. at ¶ 13.

       9.      On or about December 2020, after consulting with health officials, the Jail erected Emergency Medical Housing (EMH) on the closed outdoor yard in order to make secure overflow medical space and additional isolation space immediately available, should it be needed. See Stone Decl. at ¶¶ 14, 28; see also Exhibits A and G to Stone Decl.

       10.     The EMH was a BLU-MED Medical Shelter with 1-phase electrical and an entry vestibule, which included 706 square feet of sub flooring and ten ward beds; it required a 5-ton 60Hz environmental control unit, a negative pressure isolation system, NPIS power distribution system, 20kW generator, and a 250-gallon fuel storage system; erection and disassembly of the EMH required coordination of a variety of County resources (such as a flatbed truck and forklift) and personnel from various departments; and erection also required boring a hole through the concrete wall of the secure yard. See Stone Decl. at ¶ 16; see also Exhibits A and H to Stone Decl.

///

11. The County received financial assistance with purchasing the EMH but received no financial incentive for keeping the EMH on the yard. See Stone Dec. at ¶ 18.

12. On or about July 27, 2021, Plaintiff was booked into the Amador County jail where he was confined as a pre-trial detainee for the duration of the incident and was housed in D-pod. See Stone Decl. at ¶ 19.

13. D-pod consists of six cells on the ground floor, six cells on a second floor, and a day room that measures approximately 18 feet by 20 feet. See Stone Decl. at ¶ 20; see also Exhibits I and J to Stone Decl.; Exhibit N to Bittner Decl. (Pelton Deposition) at 30:3-30:23.

14. Plaintiff was able to access the D-pod day room at least three-to-five hours per day, at which time the cells on his floor would be open and the day room contained between twelve and twenty people in it. See Pelton Deposition at 28:7-29:5 and 35:14-35:17; see also Stone Decl. at ¶ 23.

15. The needs of the Jail changed over time as the guidance and impacts surrounding Covid-19 evolved, and on or about January 19, 2022, the Jail decided to use the EMH to house minimum security inmate workers, to keep them isolated and healthy to assist with essential daily functions such as laundry and meals. See Stone Dec. at ¶ 24; see also Exhibit G to Stone Decl.

16. On or about March 10, 2022, as soon as the jail determined that Covid-19 cases were trending down to a point where it would be safe restore services, the jail removed the EMH and resumed offering outdoor exercise. See Stone Decl. at ¶ 25; see also Exhibit G to Stone Decl.

17. On or about February 28, 2023, Governor Newsom terminated California's Covid-19 State of Emergency and Amador County terminated the Local Health Emergency. See Exhibits K and L to Stone Decl.

18. The policy that Plaintiff alleges violated his rights was the decision to close the outdoor yard, which he claims violated his Fourteenth Amendment rights by rendering him unable to exercise in the remaining areas he had access to: his cell and day room. See Pelton Deposition at 73:6-74:4; see also Exhibit O to Bittner Decl. (Defendant's Interrogatories) at Interrogatory Nos. 1 and 2; Exhibit Q to Bittner Decl. (Plaintiff's Responses) at Reply to Interrogatories Nos. 1 and 2.

19. Plaintiff alleges the yard closure was not reasonably related to the legitimate purpose of addressing Covid-19, because (1) the EMH was not used to quarantine individuals who tested positive for Covid-19 and (2) the County received financial incentives to erect and keep the EMH on the yard. See Pelton Deposition at 44:2-45:22, 51:21-52:16, and 102:12-103:9; see also Exhibit P to Bittner Decl. (Defendant's Requests for Admission) at Request No. 6; Exhibit Q to Bittner Decl. (Plaintiff's Responses) at Plaintiff's Responses at Reply to Request No. 6.

///

           20.     There is no evidence that the Jail's only reason for the yard closure was to quarantine individuals testing positive for Covid-19 in the EMH.

           21.     There is no evidence that the sole purpose of the yard closure was financial gain for the County. See Pelton Deposition at 51:16-51:20.

ECF No. 31-1.

### B. Plaintiff's Evidence

In opposition to Defendant's motion for summary judgment, Plaintiff has filed a single brief incorporating a statement of "Material Facts," Plaintiff's declaration, and attached Exhibits A and B.  See ECF No. 38.

In his statement of "Material Facts," Plaintiff disputes the following:

           1.     Whether the exercise yard was closed to address Covid-19.

           2.     Whether inmates performed large muscle exercises in their cells during the time the exercise yard was closes.

           3.     Whether the closed exercise yard was used to assist in the Covid-19 safety plan.

           4.     Whether the exercise yard was opened as soon as it was deemed safe to do so.

Id. at 1-2.

Plaintiff's attached exhibits consist of the following:

| | |
|---|---|
| Exhibit A | A copy of a document entitled "Amador County Jail Rules and Regulations." |
| Exhibit B | A copy of Amador County Sheriff's Office "Policy 1010" regarding "Exercise and Out of Cell Time." |

Id. at 15-19.

In addition to the foregoing, the Court will consider Plaintiff's verified first amended complaint as his declaration.

/ / /

/ / /

/ / /

/ / /

### III. DISCUSSION

In its motion for summary judgment, Defendant argues that the undisputed evidence shows that, under the Fourteenth Amendment, Defendant's response to the Covid-19 pandemic was reasonable and related to legitimate penological interests. See ECF No. 31. Next, Defendant argues that, under the Eighth Amendment, which could apply to a Fourteenth Amendment claim by a pre-trial detainee if the government conduct at issue is considered "punishment," Plaintiff's rights were not violated because closure of the exercise yard was a temporary measure in response to a health emergency. See id. More specifically as to its liability under Monell based on implementation of a policy, Defendant further contends that it cannot be held liable because Plaintiff cannot establish that the policy to close the exercise yard was promulgated with deliberate indifference to Plaintiff's constitutional right to exercise. See id.

The Court finds Defendant's argument persuasive. Specifically, given the overlapping legal standards under the Fourteenth Amendment and Eighth Amendment applicable here, the case turns on the reasonableness of Defendant's closure of the outdoor exercise yard. As explained below, the undisputed evidence shows that closure of the outdoor exercise yard was a reasonable response to the Covid-19 pandemic. Because it was reasonable, closure of the exercise yard did not violate Plaintiff's Fourteenth Amendment right to exercise as a pre-trial detainee. Likewise, because it was reasonable, closure of the exercise yard cannot be considered punishment such as would trigger the deliberate indifference standard under the Eighth Amendment and Monell.

The rights of pre-trial detainees are protected under the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). Although the Fourteenth Amendment governs the rights of pre-trial detainees, the Eighth Amendment also provides a "minimum standard of care" where the conditions of pre-trial detention amount to punishment. See Norbert v. City and County of San Francisco, 10 F.4th 918 (9th Cir. 2021) (quoting Jones v. Johnson, 782 F.2d 769, 771 (9th Cir. 1986)). Where a particular condition or restriction applicable to a pre-trial detainee is reasonably related to a legitimate government objective, it does not amount to punishment. See Bell, 441 U.S. at 539. A condition or restriction which attempts to minimize safety risks is a

legitimate penological interest.  See id. at 561.  Whether a decision to implement a restriction is sufficiently reasonably related to a legitimate penological interest should not be judged in hindsight and the decision should be afforded "wide-ranging deference."  Norwood v. Vance, 591 F.3d 1069 (9th Cir. 2010) (citing Bell, 441 U.S. at 547).  The Ninth Circuit has specifically acknowledged that "[a] County has considerable discretion to curtail access to exercise based on security concerns."  Pierce v. County of Orange, 526 F.3d 1190, 1212 (9th Cir. 2008) (citing Bell, 441 U.S. at 539 n.23.); see also Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (prison officials may restrict outdoor exercise on the basis of unusual circumstances); Norwood, 591 F.3d at 1068 (a right to outdoor exercise is not "absolute and indefeasible" and does not "trump[] all other considerations").

Defendant argues, and the Court agrees, that under both the Fourteenth Amendment and Eighth Amendment, the temporary closure of the outdoor exercise yard was a restriction which was reasonably related to the legitimate penological interest of preventing the spread of Covid-19 in the jail.  The undisputed evidence establishes that the closure was temporary.  The undisputed evidence also shows that the closure was implemented in response to the Covid-19 pandemic as a reasonable restriction designed to provide space to quarantine potentially infected inmates from the rest of the jail population.  The undisputed evidence further establishes that, once the danger of spread of the virus had waned, the restriction was lifted.  Finally, the undisputed evidence shows that, during the time the outdoor exercise yard was closed, Plaintiff had access to other opportunities for exercise.

In similar cases around the country involving prison response to the Covid-19 pandemic, courts have concluded that the responses implemented did not violated the deliberate indifference standard under the Eighth Amendment.  Indeed, the law indicates that any reasonable response passes constitutional muster.  See, e.g., Stevens v. Carr, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021); Grinis v. Spaulding, 459 F. Supp. 3d 289, 292 (D. Mass. 2020); see also Hill v. Whitmer, 2021 WL 3877920, at *2 (6th Cir. 2021) (affirming dismissal of deliberate indifference claim because the state agency "was aware of the risk that Covid-19 poses and took steps to reduce it"); Swain v. Junior, 961 F.3d 1276, 1287-89 (11th Cir. 2020) (concluding that

1  the facility's response was reasonable despite its failure to mitigate the spread of Covid-19);
2  Wilson v. Williams, 961 F.3d 829, 840-44 (6th Cir. 2020) (concluding that the federal Bureau of
3  Prisons' response was reasonable despite six inmates' deaths).  In Plata – the district court
4  litigation overseeing the consent-decree governing health care at California prisons – the court
5  determined that inmates in California had not shown that the state's response to the Covid-19
6  pandemic had been so deficient as to violate the Eighth Amendment where various measures
7  were undertaken even if they did not fully prevent the spread of Covid-19. See generally 445 F.
8  Supp. 3d 557 (N.D. Cal. 2020).
9         The Court finds that Defendant has met its burden of establishing that the
10 temporary closure of the outdoor exercise yard was reasonably related to a legitimate penological
11 interest.  The Court thus turns to Plaintiff's opposition, which poses a series of issues Plaintiff
12 states are in dispute, but which is not accompanied by any evidence to call Defendant's evidence
13 into question.  Because the evidence establishes that Defendant's conduct was reasonable, even if
14 not entirely successful, Defendant is entitled to summary judgment under the Fourteenth
15 Amendment, Eighth Amendment, and Monell.
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Gary Redman be dismissed as a defendant to this action for having been improperly named absent stipulation or court order in violation of Rule 15.

2. Defendant Amador County's motion for summary judgment, ECF No. 31, be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 12, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE